No. 19,654.

The State Bank of Eudora, *Appellee*, v. John Brecheisen, *Appellant*, and The Mexico Irrigated Land Company.

### SYLLABUS BY THE COURT.

Negotiable Notes—*Indorsement—Bona Fide Holder in Due Course.* The finding of the trial court herein that the plaintiff, which purchased certain negotiable notes executed by defendant before they were due, was not guilty of fraud in purchasing the notes, that it took them in good faith and is a *bona fide* holder in due course, is supported by the evidence upon which the finding was based.

Appeal from Douglas district court; Charles A. Smart, judge.   Opinion filed July 10, 1915.   Affirmed.

*Edward T. Riling,* and *John J. Riling,* both of Lawrence, for the appellant.

*John Q. A. Norton,* and *Walter G. Thiele,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This action was brought by The State Bank of Eudora to recover from John Brecheisen and The Mexico Irrigated Land Company upon certain promissory notes which Brecheisen had executed in favor of the company and which the company had transferred to the bank.

Of the execution of the notes there is no controversy, but it is contended by Brecheisen that he was induced to execute the notes through the fraud of the company, and that the bank or its officers had knowledge of the fraud when the notes were

purchased by the bank. The question of fraud as between Brecheisen and the bank, so far as his obligation on the notes was concerned, was determined by the trial court against the claims of Brecheisen. It was expressly found, and not without testimony, that the notes were duly assigned before due to the bank for a valuable consideration, and that it was a *bona fide* owner and holder of the notes in good faith and in due course.

The only question to be determined on this appeal is whether there is testimony which fairly tends to support the findings and judgment of the trial court. At the solicitation of the company Brecheisen went to Mexico to examine lands which it had for sale, with the result that he purchased land, paying part of the purchase price, and giving his notes for the unpaid balance. Soon after the purchase he became dissatisfied with his bargain, and was greatly concerned about the extent of the obligation which he had assumed. The notes first executed were offered for sale to the bank, but the officers declined to purchase, stating as a reason that they did not desire to purchase obligations of customers unless the purchase would be satisfactory to them, and that Brecheisen was dissatisfied and was seeking to secure a return of his notes. He had told the officers of the bank that he was not satisfied and had procured Smith, the cashier, to go to Kansas City and see what could be done towards obtaining a surrender of the notes. On this request Smith went to Kansas City and interviewed the officers of the company, but reported that he was unable to obtain a surrender of the notes and a cancellation of the contract. The company proposed to meet Brecheisen at Eudora on the next day, and Smith notified him that the representatives of the company were coming to confer with him about a settlement of the matter. They came on the next day, and met with Brecheisen and his son-in-law in the back room of the bank, and after canvassing the matter for some time a new arrangement was made by which the company was to dispose of Brecheisen's land within a time that was fixed. The testimony of Brecheisen is that Smith was active in this conference in arranging the settlement, and, on the other side, Smith testifies that he had no part in the negotiations until an agreement had been reached between the parties, when he was called in to prepare the papers, he being the only one there that could

use a typewriter. When the parties told him of the conditions of the settlement, Smith, according to his testimony, suggested that the company should give a bond or some security that it would carry out the agreement with Brecheisen, and the representatives of the company then agreed to do so by a guaranty that they would give him a section of land if they failed to carry out the agreement respecting the sale of his land. This was accepted by Brecheisen, and their agreements, as well as the new notes, were prepared by Smith and executed by the parties. Later on the same day the bank purchased the notes. In respect to the knowledge of the bank Brecheisen testified that the officers of the bank cautioned him about investing in Mexico, and expressed distrust of the company after the purchase was made and before the new notes were executed, and that he told them that he believed he had been defrauded in the transaction. The officers, on the other hand, say that Brecheisen never suggested that he had been defrauded in the purchase of land, but only that he had undertaken too heavy a debt, that his wife was opposed to the purchase, and that he desired to make some arrangement that would relieve him from the obligations which he feared he could not meet. Brecheisen insisted that Smith was acting as his agent, not only in going to Kansas City to obtain a surrender of the old notes, but also in arranging the settlement under which the new notes were executed. Smith, on the other hand, says that the only part he took in the transaction beyond the writing of the papers was that when the parties told him of the terms of the settlement he suggested that the company provide a guaranty or forfeit in case the company failed to comply with its agreement. Counsel for Brecheisen suggest that there may have been a secret agreement between Smith and the company by which the bank, for a consideration, was to assist in obtaining the execution of the new notes, and it is insisted that from all the circumstances it is reasonable to infer that there was some understanding between the bank and the company to bring about the new agreement and the execution of the new notes. The district court, which heard all the testimony, however, has drawn a different inference, and to have done so must have accepted as true the testimony offered in behalf of the bank and disbelieved that which was contradictory of it. If the

testimony in behalf of the bank is true Smith was not acting as agent of Brecheisen in the settlement, and although Brecheisen was dissatisfied with the contract in the first instance he was entirely satisfied with the new arrangement—so well satisfied that he acted as the agent of the company for months afterwards, and further, that he desired that the new notes should be left at or sold to the bank so that he might the more easily arrange for payment as the notes came due. There is testimony that the officers did not advise the settlement that was made, nor take any part in it until the parties directly interested had reached an agreement. There is testimony, too, that there was no complaint by Brecheisen to the bank at any time prior to the settlement of misrepresentation or deception in the sale of the land, nor even to the officers of the company before the settlement. The bank refused to purchase the old notes because Brecheisen was dissatisfied with the purchase and fearful that he would be unable to pay the old notes when they became due, and only purchased the new notes because he had expressed satisfaction with the new arrangement and had requested that the notes be purchased by the bank. The notes were negotiable in form, and according to the evidence were negotiable in fact. Under the testimony accepted by the court the bank purchased them before maturity in good faith, for value and without notice of any infirmity. Counsel discuss the rules of law respecting agency and negotiable paper about which there can be little dispute, but the case turns upon questions of fact, and these having been determined in favor of the bank leave no real contention about the rules of law as to the defendant's liability on the notes.

The judgment of the district court is affirmed.